DECISION
This matter is before the Court on a jury-waived trial. Mr. Randall seeks an injunction from the Court, ordering Mr. Reis to not contact or harass him. Motions for contempt for alleged violations are also pending.[1]
 FINDINGS OF FACT
William Randall resides on Zachariah Place in Warwick, Rhode Island. His next door neighbor is John Reis. The rear of their parcels face the same body of water, used by each of them for boating. Over the years, the parties disputed various neighborhood issues. They argued over who should park in which spaces on the street, who caused waves at the docks, problems with pets, concerns with children and the like. Bitter words were often exchanged, and the police were often called.
In 1999, orders were issued from the Providence County Superior Court restraining each of the parties from interfering with, or contacting the other.[2] *Page 2 
Through the years, the neighbors' relationship did not improve. Words were exchanged and the mocking occasionally included other neighbors harassing Mr. Randall in the presence of Mr. Reis.
On August 9, 2007, another parking dispute arose. As Mr. Randall parked in front of Mr. Reis' home, Mr. Reis called the police. Waiting for their arrival, Mr. Reis lay down in the street in front of Mr. Reis' vehicle and camper. Mr. Randall emerged from his home and approached Mr. Reis, with a video-camera in one hand and a spray can of WD-40 in the other. The events are depicted on the video which is in evidence. As Mr. Randall approached Mr. Reis, Mr. Reis approached Mr. Randall. Mr. Randall, while making the video, sprayed WD-40 at Mr. Reis and Mr. Reis fell to the ground, complaining of eye irritation.
On September 25, 2007, the instant action was filed in this Court.[3] A temporary restraining order issued the same day. On October 4, 2007, mutual preliminary injunctions issued and have continued, by agreement, pending this Decision.[4]
In the fall of 2007, Mr. Randall erected two flagpoles on his properties, from which he flies two large American flags. The flags fly within feet of the Reis house. The flags and flagpoles are obscured from view from the Randall house, as they are behind trees (closer to the property line) which are on the Randall property, near the border. The police were called shortly after the flagpoles were erected and no citation issued.
On October 13, 2007, Mr. Randall contacted the Warwick Police to complain that his tires were slashed. The police were called but issued no citations. *Page 3 
At some point, the Warwick Police informed Mr. Randall that they would not enforce the Rhode Island Superior Court restraining orders.
At some point, a sign was placed on the Randall mailbox which stated "Beware of Attack Neighbor." Mr. Randall did not place the sign on the box.
At some point a "Mr. Bill"[5] doll was placed in the window of the Reis family home, facing the Randall home.
One day in April, 2008, Mr. Reis parked his motor vehicle in front of the Randall home, but across the street, with the left wheels to the curb. Mr. Randall contacted the police, but no citation was issued.
In April, 2008, Mrs. Reis was driving her daughter home in her family car. She noticed Mr. Randall's vehicle in front of them. While driving his vehicle from Warwick Avenue to their own neighborhood, Mr. Randall videotaped the Reis vehicle by holding a camera out the driver's window, and pointing it behind his car toward the Reis vehicle.
In June, 2008, Mr. Reis contacted the police to complain that Mr. Randall was videotaping the Reis home and their daughter. Mr. Reis contacted the police, who visited Mr. Randall. The police viewed the video but did not issue a violation.
On December 11, 2008, Mr. Randall requested a continuance for the trial. He stated in writing that he was building a house in Bristol. When questioned during the trial, Mr. Randall became defensive when he was questioned about that date. Mr. Randall testified that on December 11, he did not go to the construction site but worked on paperwork. A surveillance video presented at trial established that he went to the Bristol site that morning, met with concrete contractors, but spent the majority of the *Page 4 
morning in his van at the site wandering aimlessly around other Bristol neighborhoods. He left the area in the early afternoon. Mr. Randall's testimony was therefore untruthful. Mr. Randall is not in fear of Mr. Reis and admits he is not in fear of Mr. Reis.
 ANAYSIS AND CONCLUSIONS OF LAW
Contempt
Each of the parties filed motions for contempt, alleging various violations of the preliminary injunctions. On such motions, the moving parties must meet a significant burden of proof. "A complaining party can establish civil contempt on behalf of his opponent when there is clear and convincing evidence that a lawful decree has been violated."Nardone v. Ritacco, 936 A.2d 200, 204 (R.I. 2007) (quoting Direct Actionfor Rights and Equality v. Gannon, 819 A.2d 651, 661 (R.I. 2003)).
To establish contempt, the moving party must establish that the provisions of an order have been violated. Accordingly, the provisions of the order must be clear. "The terms of the order should be specific, clear and precise so that one need not resort to inference or implications to ascertain his duty or obligation thereunder." State v.Lead Industries, Association, Inc., 951 A.2d 428, (R.I. 2008) (quotingSunbeam Corp. v. Ross-Simons, Inc., 86 R.I. 189, 194, 134 A.2d 160, 162
(1957)). If a question of interpretation exists "[a]ny ambiguities or uncertainties in court orders are read in the light most favorable to the person charged with contempt." State v. Lead Industries,Association, Inc., 951 A.2d 428, (R.I. 2008).
In the instant case, the language of the order is sufficiently clear. Each party is "restrained from interfering with, molesting, harassing, threatening, annoying or *Page 5 
contacting" the other "in any manner, directly or indirectly." Order of October, 4, 2007. Although the language is broad, it is also unequivocal. It seeks to preserve the status quo by preventing all interference, direct and indirect. It is clear on its own terms.
While the order is distinct, the evidence is not. The Court is unable to make a specific finding as to when the flags were first installed, although they obviously annoy, and were installed to annoy the Reis family.
Mr. Randall's October, 2007 call to the police that his tires were slashed was never shown to be an attempt to harass or annoy Mr. Reis.
It was never established which party, if either, placed the sign on the mailbox. When Mr. Reis parked his car across the street, Mr. Randall's telephone call complaining of an action that appears to be against the traffic laws was appropriate. While these may be contemptuous if the Court had jurisdiction and viewed the situation subjectively, proof of contempt requires more. Clear and convincing proof was not submitted for these incidents.
One incident that stands apart from the rest is Mr. Randall's videotaping of Mrs. Reis, who happened to be following him to their homes in the same neighborhood. He did so by pointing a video camera toward the rear of his car, while he was operating his car forward. Mrs. Reis provided testimony. Mr. Randall admitted his actions in April of 2008, after the injunction was issued. He offered no reasonable justification for these actions. Clear and convincing testimony demonstrated defiance of the Court's order.
The continued flying of the flags by Mr. Randall, obscured from view from his house but visible to the Reis house, is also ongoing contempt. *Page 6 
Injunctive Relief.
Mr. Randall also seeks permanent injunctive relief. Mr. Reis withdrew his claim for injunctive relief, alleging that both parties are bound by the 1999 orders. The Court finds the 1999 orders continue in full force and effect, as neither party has demonstrated that they are unenforceable in any manner.
In issuing a preliminary injunction, this Court considers
 (1) whether the moving party established a reasonable likelihood of success on the merits; (2) whether the moving party will suffer irreparable harm without the requested injunctive relief; (3) whether the balance of the equities, including the public interest, weighed in favor of the moving party; and (4) whether the issuance of a preliminary injunction served to preserve the status quo ante. Allaire v. Fease 824 A.2d 454, 457 (R.I.,2003) quoting School Committee of North Kingstown v. Crouch, 808 A.2d 1074, 1077
(R.I. 2002).
Mr. Reis claims that Mr. Randall failed to meet his burden as he did not establish fear. It is correct that Mr. Randall did not demonstrate fear. Mr. Randall's demeanor on that evening, as depicted by the video submitted to the Court, is aggressive and confrontational, not fearful. Mr. Randall approached Mr. Reis, first at the street, then at the curb. Mr. Randall sprayed WD-40 at Mr. Reis as Mr. Randall videoed the event. This was not fear. Mr. Randall's acts were aggressive, confrontational behavior, raising the events to a more dangerous, violent level.
While Mr. Randall was not in fear, Mr. Reis cited no authority to establish that fear is a necessary prerequisite to the issuance of an injunction. Clearly, fear plays an important role in civil assaults and other torts. Webbier v. Thoroughbred Racing Protective Bureau,Inc., 105 R.I. 605, 614 (R.I. 1969). Broadley v. State, 939 A.2d 1016
(R.I. 2008). Fear is not an essential element for the injunctive relief requested here. *Page 7 
However, as Mr. Randall was an aggressor for the spraying incident, each of the parties show some need for injunctive relief. Mr. Randall has demonstrated a likelihood of success on the merits. Irreparable harm, without the requested relief has not been demonstrated, for Mr. Reis and Mr. Randall have both been protagonists. The harm which Mr. Reis is alleged to have threatened was all nonviolent. He lied down in the street blocking a car, he attempted to ridicule Mr. Randall by his words, dolls were placed in the window, and the like. None of this harm has been shown to be irreparable. A balancing of the equities tips in favor of neither party as both have sullied hands.
It is noteworthy that all of this has occurred while the 1999 restraining orders are in full force. As such, the courts have already provided sufficient relief for the parties, and the parties already have an adequate remedy at law.[6] As our high court has recently declared "there is no basis for plaintiff's prayer for injunctive relief because there is an adequate remedy at law and because there is no allegation of a continuing violation by defendant." Park v. Ford Motor Co.,928 A.2d 469, 472 (R.I. 2007). Equitable jurisdiction is limited where legal relief is available. ". . . indeed the just foundation of equitable jurisdiction fails in all such cases, as there is a plain, complete, and adequate remedy at law. FUD's, Inc. v. State of Rhode Island,727 A.2d 692, 697 (R.I. 1999)
As both of the parties possess an adequate remedy at law (which they failed to pursue) an award of yet another injunction is inappropriate. *Page 8 
The Failure to appear at Court.
Mr. Randall informed this Court that he was unable to attend as he was finishing construction on a house. When asked, he testified he was home that day, completing plans on the house. When shown a video presentation of his actions he recanted. Obviously, this detracted significantly from his credibility, and was an affront to the Court. He knows better. However, this was not the subject of the prior contempt motion, nor was the action of contempt done in the presence of the trial justice. Mr. Randall is entitled to prior notice of the alleged contempt and an opportunity to be heard. Holt v. Virginia, 381 U.S. 131, 136,85 S.Ct. 1375, 1378 (1965); Sorrentino v. Sorrentino, 687 A.2d 1245 (R.I. 1997).
 CONCLUSION
Mr. Randall's motion for contempt is denied. Mr. Reis' motion for contempt is granted to the extent that the Court finds Mr. Randall violated a court order by videotaping other members of the Reis family, and by his flying of the flags. He is ordered to cease doing so in the future.
The Court denies Mr. Randall's request for another injunction as the 1999 orders continue in effect, and for the other reasons stated herein.
The Court orders a payment of $100 from Mr. Randall to the Rhode Island Superior Court for his acts of contempt. He is ordered to immediately remove the flags and the flagpoles and make the payments within ten days of the date of this Decision.
Upon compliance with this Decision, the Court will enter a Final Judgment consistent herewith.
[1] Initially, the parties sought contempt of previously issued temporary restraining orders. As those orders were issued by the Superior Court for Providence County and neither party filed a motion for contempt of those cases, this justice declined jurisdiction.
[2] Randall v. Reis, P.C. No. 99-6576, Reis v. Randall, P.C. No. 99-6527
[3] Ms. Reis was originally included in the action but was dismissed by agreement.
[4] While this Court believed the continuances would aid the parties and their counsel in moving toward a resolution, at trial the Court learned that the delay was detrimental in allowing the quarrel to fester.
[5] Mr. Bill is a doll popularized by the long-running television series "Saturday Night Live." In the comedy show, the doll is dropped, run over and otherwise harmed.
[6] As the 1999 orders continue in effect, another injunction will add nothing to the goal of advancing the status quo. *Page 1